# H. W. THOMPSON v. C. GUST LAVEN.[1]

December 14, 1923.

No. 23,561.

**Verdict for plaintiff sustained by evidence.**

1. Action to recover possession of a stock of goods. *Held* that the evidence showed conclusively that plaintiff was the owner and entitled to possession of the goods, and that the court was correct in so instructing the jury.

**Creditor's right to possession of debtor's stock ends when debt is paid.**

2. Where a creditor is given possession of his debtor's store and stock of goods with authority to carry on the business and take the proceeds until his debt is paid, his right of possession terminates when his debt is paid.

**Debtor released when creditor accepts third party as debtor.**

3. Plaintiff having assumed and agreed to pay a debt owed by defendant to a third party as part of the purchase price of property sold him by defendant, and such third party having accepted plaintiff as his debtor in the place of defendant, defendant was released from the debt.

**Evidence properly excluded.**

4. Evidence of defaults under a contract for the purchase of real estate was properly excluded as not involved in this action.

Action in replevin in the district court for Norman county to recover possession of certain property or $8,000, in case possession could not be had. The case was tried before Grindeland, J., who at the close of the testimony granted plaintiff's motion for a directed verdict for the value of the property as determined by the jury. The jury found the value to be $6,500. From an order denying his motion for a new trial, defendant appealed. Affirmed.

*O. J. Ostensoe* and *John B. Thompson,* for appellant.

*Brattland & McLaughlin, John M. Hetland, Lloyd Hetland,* and *Christian G. Dosland,* for respondent.

[1]Reported in 196 N. W. 475.

TAYLOR, C.

This is an action in replevin to recover possession of a stock of general merchandise in a country store at Flom in Norman county. Plaintiff executed the usual bond and directed the sheriff to take possession of the goods. Defendant rebonded and retained possession of the goods and proceeded to dispose of them. The court instructed the jury that plaintiff was entitled to possession of the goods; that they could not be returned to him as defendant had disposed of them, and directed the jury to return a verdict for plaintiff and to determine the value of the goods on June 27, 1922, the date on which plaintiff had demanded possession of them. The jury returned a verdict for plaintiff fixing the value of the goods at $6,500. Defendant appealed from an order denying a new trial.

Defendant contends that the evidence made the ownership and right of possession of the goods a question for the jury, and that the court erred in various rulings admitting and excluding evidence.

On November 28, 1921, plaintiff and defendant entered into a written contract for an exchange of properties. Defendant agreed to sell and convey to plaintiff the stock of merchandise in question, an electric light plant and all other equipment pertaining to the store, and the lots on which the store building and a dwelling house were situated. Plaintiff agreed to sell and convey to defendant two tracts of farm land. The value of the lots to be conveyed by defendant was fixed at $4,000 above the encumbrances thereon and the value of the merchandise and store equipment at $11,000. The value of the farm land to be conveyed by plaintiff was fixed at $7,075 above the encumbrances thereon. The contract provided that defendant should convey the lots "by contract for deed payments to be $50.00 per month at 7 per cent interest and the total consideration in said contract is to be $4,000.00;" and that plaintiff should pay therefor in monthly instalments of $50 each according to the conditions of such contract for deed. It also provided that plaintiff should convey the farm land free from encumbrance except two specified mortgages, should pay $100 as earnest money on the execution of the contract, and $3,825 in 30 days thereafter. These payments, added to the value of the farm land, made up the amount

allowed for the merchandise and store equipment. The contract also provided that plaintiff should take possession of the store and stock of merchandise on November 29, 1921, that defendant should pay all bills for goods received prior to November 29, 1921, and that plaintiff should pay all bills for goods received after that date. The contract also provided that all papers should be executed and delivered on or before the first day of January, 1922.

The store and stock of merchandise were turned over to plaintiff on November 29 as agreed and Clarence Albertson, who had been in charge of the store for defendant, was continued in charge of it for plaintiff. About the same time that the store was turned over to him, plaintiff paid the $100 and executed and delivered deeds conveying the farm lands to defendant. Defendant placed these deeds on record and subsequently sold and conveyed the lands to other parties. To carry out the provision of the contract as to the lots on which the store building was situated, plaintiff and defendant executed a contract for deed, dated November 29, 1921, and acknowledged December 10, 1921, by which defendant covenanted to convey the lots to plaintiff if plaintiff made the payments therefor as therein provided, and by which plaintiff agreed to pay $50 per month until the sum of $4,000 had been paid for the lots and also assumed and agreed to pay a mortgage of $3,000 thereon. At the same time by mutual agreement, plaintiff assumed liabilities to wholesale houses which, with the payment then made from money taken in by the store after plaintiff had taken possession of it, reduced the cash payment of $3,825 to the sum of $2,014.28, for which amount plaintiff gave defendant his check. This check is the basis of the present controversy. It was returned by the bank unpaid for lack of funds. Plaintiff explained this by showing that a check received by him and deposited to the credit of his account had been returned unpaid.

When the check given defendant was returned, and on December 14, 1921, plaintiff and defendant made a further agreement that defendant should retain the check; that plaintiff should pay on the check $600 in cash, which payment was made and indorsed thereon on that date, and that Albertson should apply on the check the pro-

ceeds from the store until the balance due defendant was fully paid. The parties disagree as to one provision of this agreement. Plaintiff claims that Albertson was to continue operating the store as his manager and pay over the proceeds to defendant until the balance due on the check was paid. Defendant claims that the possession of the store was turned back to him with the understanding that he should retain possession until he was fully paid. Which claim is correct is not important as we look at the matter. Defendant has never claimed or sought a rescission of the contract or of any part of it. Taking his own version of the transaction, he was merely a creditor placed in possession of his debtor's stock of merchandise with authority to make sales in the usual course of business and appropriate the proceeds until his debt was paid. Conceding that he was given possession of the goods, his right to such possession terminated when his debt was paid. Albertson remained in charge of the store, whether under plaintiff or under defendant is in dispute and not material. He paid the proceeds of the store to defendant from time to time and indorsed the amounts thereof on the check.

In June, 1922, plaintiff arranged with the Kelly Sales Company to conduct a "sale" of the goods in the store, and on June twenty-sixth put up posters advertising such sale. Thereupon defendant locked up the store and excluded plaintiff therefrom. Plaintiff demanded possession of the goods which was refused and then brought this action. That defendant had received from the store the full amount due him prior to the demand for possession conclusively appears from the evidence. Consequently, even on his own theory, defendant's right to the possession of the goods had terminated, and the court correctly instructed the jury that plaintiff was the owner of the goods and entitled to the possession of them at the time he made his demand.

At the time of giving the check, plaintiff, in writing, assumed and agreed to pay a bill for goods which defendant owed to the Mishawaka Woolen Company. This bill had not been paid, and defendant sought to justify his action in retaining possession of the goods on that ground. This claim seems to have been an afterthought arising in consequence of letters written to defendant by the woolen

company some time after he had excluded plaintiff from the store, and it is at least doubtful whether the agreement could be construed as covering this bill even if defendant remained liable thereon. However this may be, the court ruled that defendant was no longer liable for this bill, for the reason that the woolen company had accepted plaintiff in the place of defendant as its debtor, and the evidence justified that ruling. Before the bill became due defendant wrote the woolen company that he had sold out to plaintiff and that plaintiff would assume the bill, whereupon the woolen company wrote plaintiff:

"We are perfectly willing to transfer the account to you, but it is, of course, necessary that we have your permission to make the transfer."

That they received such permission appears from the fact that they subsequently acknowledged a remittance from plaintiff and insisted that he make prompt payment of the balance.

Defendant also complains of the rulings excluding testimony to show that plaintiff had failed to make the stipulated payments of $50 per month for the lots. This ruling was correct. The contract in respect to the lots was embodied in a separate instrument executed in part performance of the original contract. It prescribed the rights, obligations and remedies of the parties as to the lots, and neither the pleadings nor the facts shown would justify a finding that the rights under that written contract were affected in any way by the oral agreement here in question.

We find no other questions requiring special mention and the order is affirmed.